**ACORN, et al., Plaintiffs–Appellants,**

v.

**CITY OF TULSA, OKLAHOMA, et al., Defendants–Appellees.**

No. 84–2606.

United States Court of Appeals, Tenth Circuit.

Dec. 15, 1987.

Steve Bachmann, New Orleans, La., for plaintiffs-appellants.

Imogene Harris, Asst. City Atty. (Neal E. McNeill, City Atty., with her on the brief), Tulsa, Okl., for defendants-appellees.

Before McKAY, SETH and TACHA, Circuit Judges.

TACHA, Circuit Judge.

The City of Tulsa regulates the use of public property through a scheme of municipal ordinances. The Association for Community Reform Now (ACORN) challenges the validity of four of these ordinances before this court. These ordinances provide, *inter alia:*

**Tulsa, Okla., Rev. Ordinances tit. 26, § 2 (1985).**

> It shall be an offense for any person to perform any of the following acts within any public park or other area under the control of the Park and Recreation Board unless the doing of such act is authorized by the said Board or the Park Superintendent.
>
> (a) To give any theatrical entertainment, moving picture show, parade, procession, public gathering or public meeting of any kind, post or display any sign banner, or advertisement upon any tree, post, building or other structure.

**Tulsa, Okla., Rev. Ordinances tit. 27, § 511 (1985).**

> A. It shall be an offense for any person to do any of the following acts upon any public street, highway, alley, public place or upon or to any other property, real, personal or mixed, belonging to the

City of Tulsa, regardless of the purpose for which such property was dedicated, acquired or purchased, without the consent of the Board of Commissioners of the City of Tulsa:

. . . .

2. To take up one's abode upon said property.

3. To build any structure of any kind upon any of said property.

**Tulsa, Okla., Rev. Ordinances tit. 27, § 514 (1985).**

It shall be an offense for any person to maintain, erect or permit the erection of any building, hut, hotel, shanty, tent or other structure under his control upon any street, sidewalk, alley or other public grounds.

**Tulsa, Okla., Rev. Ordinances tit. 26, § 8 (1985).**

No person shall camp, erect a tent, build a fire or park an automobile or other vehicle for the purpose of sleeping therein or under cover projecting therefrom, within any park or other area under the jurisdiction of the Park and Recreation Board, except at such place or places as may be designated and set aside for such purposes.

ACORN appeals from a district court decision holding each of the ordinances facially constitutional. We affirm the decision holding sections 514 and 8 facially constitutional but reverse the decision holding sections 2 and 511 constitutional.

ACORN is a non-profit organization that seeks to advance the interests of low- and moderate-income people by engaging in various forms of community organization and activity. In the fall of 1982, ACORN planned a series of activities throughout the country to protest policies implemented by the Reagan Administration. The demonstrations were called "Reagan Ranches" and were reminiscent of "Hoovervilles" of an earlier time. They included public rallies, speeches, assemblies, and the erection of tent cities to protest the Administration's economic policies. The ACORN organization in Oklahoma planned to hold such an event in Tulsa on October 29 through October 31, the weekend before the November election. Plans for the Reagan Ranch in Tulsa included a symbolic burial service for Reaganomics, a Nancy Reagan fashion show, soup kitchens, a tent city, and a foreclosure of the ranch.

ACORN first planned to conduct its activities on Salvation Army property, but the Salvation Army decided against permitting the assemblies. ACORN then arranged to hold the demonstrations on property owned by a local Catholic church. That arrangement fell through on October 25, four days before the Reagan Ranch activities were to begin. ACORN attributes this denial to comments reportedly made by James Inhofe, the Mayor of Tulsa, to the effect that ACORN would not be able to hold its demonstration anywhere in the city.

On Wednesday, October 27, the organizing director for ACORN in Oklahoma, Jeff Murray, met with the Assistant Park Director of Tulsa, Max Wiens, to request permission to erect a Reagan Ranch in Springdale Park from October 28 to October 30. Wiens checked with the Park Board's legal department and showed Murray city ordinances prohibiting the erection of a dwelling or building on public property without the permission of the Tulsa Board of Commissioners and prohibiting the erection of a tent for the purpose of sleeping therein on public property. Wiens suggested that since he could not give ACORN permission to erect tents on public property, Murray should attend an informal Park Board meeting the following day.

At the Thursday meeting, the Park Board informed Murray that only the Tulsa Board of Commissioners had authority to allow ACORN to pitch tents. The Park Board also told Murray that he needed no permit to hold a demonstration if no tents were erected and if park curfews were obeyed. ACORN, however, was told that it was prohibited from posting any banners in the park. Murray asked Hugh McKnight, the Director of Parks and Recreation and a member of the Tulsa Board of Commissioners, to grant ACORN a permit. McKnight said he did not have the authority to grant a permit. The Board of Commissioners

met the next day, but ACORN made no request for a permit, apparently because Murray did not know the Board was meeting that day. ACORN erected its Reagan Ranch facilities on private property on Friday evening.

In 1983, ACORN sued the city, McKnight, and Inhofe for injunctive relief and damages, challenging the constitutionality of the four Tulsa ordinances. The district court dismissed the action against McKnight and Inhofe on the merits. The court then declined to consider ACORN's arguments that the ordinances were unconstitutional as applied because ACORN had never asked the Board of Commissioners to grant a permit. The court held that the Tulsa ordinances are facially constitutional under the first and fourteenth amendments.

On appeal, ACORN alleges that the district court erred in holding the ordinances facially constitutional and in refusing to consider the constitutionality of the ordinances as applied. ACORN argues that each of the ordinances 1) vests undue discretion in city officials, 2) is unconstitutionally vague, 3) unduly interferes with protected constitutional activity, and 4) is unconstitutional as applied.

## I.

We first consider the threshhold questions raised by the city: whether ACORN has standing to challenge the Tulsa ordinances and whether the challenge is ripe for decision. "Standing doctrine is designed to determine *who* may institute the asserted claim for relief. Ripeness doctrine addresses a *timing* question: *when* in time is it appropriate for a court to take up the asserted claim." *Action Alliance of Senior Citizens v. Heckler,* 789 F.2d 931, 940 (D.C.Cir.1986) (emphasis original).

■ "The term 'standing' subsumes a blend of constitutional requirements and prudential considerations...." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The constitutional dimension of standing derives from

article III, which limits the judicial power of the United States to "cases" and "controversies." In order to satisfy the article III restrictions on standing, a party must show at least that he or she has suffered an actual or threatened injury caused by the defendant and that a favorable judicial decision is likely to redress the injury. *Id.* at 472, 102 S.Ct. at 758; *see also Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 297–98, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979).

The prudential limitations on standing have been developed to focus the questions presented for decision in the federal courts. *See, e.g., Secretary of State v. Joseph H. Munson Co.,* 467 U.S. 947, 955, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984); *Valley Forge Christian College,* 454 U.S. at 474–75, 102 S.Ct. at 759–60. But "[w]ithin the context of the First Amendment, the Court has enunciated other concerns that justify a lessening of prudential limitations on standing." *Munson,* 467 U.S. at 956, 104 S.Ct. at 2846. Thus, there are circumstances in which parties who have not actually engaged in protected activity are allowed to challenge a statute that inhibits others from engaging in protected speech or expression. *Id.* at 956–57, 104 S.Ct. at 2846–47.

In *Association of Community Organizations for Reform Now v. Municipality of Golden, Colo.,* 744 F.2d 739, 745 n. 3 (10th Cir.1984), this court held that the same appellant who is before us in this case had standing to challenge a municipal ordinance prohibiting uninvited door-to-door peddling, soliciting, and poll taking. ACORN had suffered an actual injury when its representatives were cited for violating the ordinance, and it suffered a threatened injury because the city stood ready to enforce the ordinance again. No prudential considerations justified not affording ACORN standing to challenge the Golden ordinance.

■ We hold that ACORN has satisfied the constitutional requirements for standing in this case as well. ACORN suffered actual injury as a result of section two

when it was denied permission to post banners in the park. ACORN has not suffered actual injury as a result of the other ordinances, for ACORN never formally requested a permit for its proposed activities as required by section 511, nor did ACORN engage in any activities barred on city property by sections 514 and 8. However, ACORN has suffered a threatened injury from each of the ordinances. It has shown an unmistakable intention to engage in activities that are prohibited by each of the challenged ordinances. The city has demonstrated its resolve to enforce the ordinances regulating the use of municipal property against ACORN. A plaintiff need not succumb to a criminal prosecution to challenge a statute if "the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt*, 442 U.S. at 298, 99 S.Ct. at 2308.

ACORN has also overcome the prudential limitations on standing. We said in *ACORN v. Golden*, 744 F.2d 739 (10th Cir. 1984):

> In this case ACORN claims that its own First Amendment rights have been and will continue to be infringed by the challenged ordinance. Thus, we believe that there is no prudential reason why the federal courts should not entertain this suit. Other courts hearing challenges to laws requiring a permit before engaging in First Amendment activity have also found that the plaintiffs had standing.

744 F.2d at 745 n. 3. We conclude that the same analysis applies in this case. ACORN has standing to challenge the Tulsa ordinances.

The city argues that this case is not ripe because ACORN never asked the Board of Commissioners for permission to engage in the proposed activities on city property. Whether or not a question is ripe for decision requires an examination of "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

In *ACORN v. Golden*, we held that if a plaintiff has standing to bring a facial challenge for injunctive or declaratory relief, "[a]pplying for and being denied a license or an exemption is not a condition precedent to bringing a facial challenge to an unconstitutional law." 744 F.2d at 744. We relied on numerous Supreme Court cases emphasizing that one need not seek a license in order to challenge an ordinance that impermissibly infringes upon first amendment activity. *Id.* (citing cases). The circumstances in this case are similar to those we considered in *ACORN v. Golden*. In both instances ACORN has faced a continuing threat of prosecution should it engage in prohibited expressive conduct. Moreover, both cases involve a clearly framed issue of the facial constitutionality of specific municipal ordinances. We therefore hold that ACORN's challenge to the Tulsa ordinances is ripe notwithstanding ACORN's failure to seek a permit from the city.

The city relies on *Williamson County Regional Planning Comm. v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), decided after *ACORN v. Golden*, in contending that this case is not ripe. In *Williamson*, the Court held that a suit alleging that a zoning ordinance effected an unconstitutional taking of property under the fifth amendment was not ripe because the plaintiff had not sought a variance from the zoning commission, and thus had not exhausted its administrative remedies. *Id.* at 3116. *Williamson*, however, is inapposite. The distinction lies in the nature of a first amendment claim compared with the nature of a fifth amendment just compensation claim. In order to decide if a taking has occurred within the meaning of the fifth amendment, a court must consider "the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations. Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the

regulations at issue to the particular land in question." *Id.* at 3119 (citations omitted). By contrast, a first amendment challenge to the facial validity of a statute is a strictly legal question; it does not involve the application of the statute in a specific factual setting. Further, unlike an alleged unconstitutional taking, an ordinance that proscribes first amendment activity inhibits those who would speak but for the threat of criminal sanctions. ACORN, therefore, has already suffered a threatened injury, and its constitutional claims are ripe for decision.

We emphasize, however, that our holding that ACORN has standing to challenge these ordinances and that this case is ripe for decision does not expand the substantive issues that we should address beyond those appropriate to a challenge to the facial validity of the ordinances. The standards to be applied in a case involving the application of a regulation, ordinance, or statute to a particular set of facts are quite different from the standards we apply to the general question of the facial constitutionality of these ordinances. In determining the facial validity of a statute or ordinance the court does not consider any specific type of conduct. Rather, the facial validity of a statute is decided by reference to all of the conduct that is proscribed by the statute. This court must evaluate the constitutionality of each of these ordinances in light of the effect that their provisions have on any use of city property, not those uses apparently intended by ACORN.

## II.

Sections 2 and 511 allow certain conduct on city property if a license is obtained from the city. An ordinance that imposes a license requirement in order to engage in communicative conduct must include clear guidelines for the official who decides whether to issue a license. Unfettered discretion in the licensing official raises concerns that a license may be denied for reasons unrelated to the government interest in regulating the conduct, *see Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 153, 89 S.Ct. 935, 940, 22 L.Ed.2d 162 (1969), or that a license may be denied because of opposition to the content of the speaker's message. *See ACORN v. Golden,* 744 F.2d at 748–49. The Supreme Court has struck down licensing schemes that give no standards for the licensing official to apply. *See, e.g., Saia v. New York,* 334 U.S. 558, 560–62, 68 S.Ct. 1148, 1149–50, 92 L.Ed. 1574 (1948); *Hynes v. Mayor of Oradell,* 425 U.S. 610, 622, 96 S.Ct. 1755, 1761, 48 L.Ed.2d 243 (1976). Conversely, where clear standards are established for the issuance of a license, the scheme satisfies the constitutional requirements. *See, e.g., Heffron v. International Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 649, 101 S.Ct. 2559, 2565, 69 L.Ed.2d 298 (1981); *Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949); *Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

Permissible licensing standards can be found in "the words of the ordinance itself," "the interpretations the court below has given to analogous statutes," and "perhaps to some degree, the interpretation of the statute given by those enforcing it." *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972). The language of sections 2 and 511 fails to provide any guidance to the licensing official who must decide whether proposed conduct should be permitted on city property. We are not aware of any court that has construed these ordinances. We are left, then, with the practice of the city officials in deciding whether a permit is necessary and, if so, whether a permit should be issued.

The Park Board has the authority to allow various acts that are otherwise prohibited on city property by section two. Hugh McKnight, the Park Director, testified concerning his approach to allowing activities in city parks. He testified that in many instances there is no need for a permit, while in other cases a permit is required and is conditioned on other city regulations, such as Health Department sanitation requirements. He said that the Park Board would rely on the advice of its attorney in deciding if a certificate of insurance

should be required, but that he was unaware of any guidelines followed by the attorney. McKnight said that a group that wanted to exclude the general public from a city park would need a permit. He said that the use of a bullhorn would be allowed only if it was compatible with the surrounding neighborhood, but that the Park Board would rely primarily on its own judgment in determining whether a use was compatible or not. In regard to ACORN's proposed activities, McKnight said he was concerned about having an open fire and serving food as part of a soup kitchen in a park, but that he would have no problem if a platform was laid on the ground for a speaker to use as a podium. He also testified that the Park Board lacked the authority to allow the erection of tents in the parks.

█ We hold that the informal interpretations of section two offered by the city do not establish the clear standards required by the first amendment. At best, McKnight's testimony identified those situations in which a permit would be necessary and those situations in which it would not. Regarding those situations in which a permit would be needed, McKnight explained only a few reasons that he has used to grant or deny a permit, and there is no suggestion that those reasons would provide the exclusive standards in deciding whether to issue a permit. In essence, the Park Board relies on its own intuitive judgment; however well exercised, it is an insufficient standard to be applied in determining the permissibility of first amendment activities. Despite ACORN's contention that Mayor Inhofe intimidated city officials so they would deny a permit for a Reagan Ranch, we have no reason to doubt McKnight's testimony that he has never denied a permit to a group because of the message the group wanted to convey. But in the absence of clear standards the city retains "the *power* to enforce the ordinance in a manner that favors some viewpoints over others." *ACORN v. Golden,* 744 F.2d

at 748 (emphasis added). We therefore hold that section two is unconstitutional.

The Tulsa Board of Commissioners has the authority to permit the building of a structure on city property pursuant to section 511. The record does not contain any evidence of the standard the Board of Commissioners employs in deciding whether to grant a permit to build a structure. Accordingly, section 511 is unconstitutional because of the unlimited discretion it gives to the Board.

█ ACORN argues that section 511 is also invalid because the prohibition on the building of any "structure" is unconstitutionally vague. We hold that the term "structure" in this context is not vague. *Compare Juluke v. Hodel,* 811 F.2d 1553, 1561 n. 25 (D.C.Cir.1987) ("structure" is vague because it "is not being used in accordance with its customary meaning. If structure were given its usual meaning or else defined in the regulation, it might not be vague.") *and Hart Book Stores v. Edmisten,* 612 F.2d 821, 834 (4th Cir.1979) ("building, premises, structure or other facility" is "reasonably definite"), *cert. denied,* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed. 2d 1124 (1980) *with Students Against Apartheid Coalition v. O'Neil,* 660 F.Supp. 333, 336–39 (W.D.Va.1987) ("any structure or extended presence" is vague, especially "extended presence"). The Tulsa ordinance "delineates its reach in words of common understanding," *Grayned,* 408 U.S. at 112, 92 S.Ct. at 2301 (1972) (quoting *Cameron v. Johnson,* 390 U.S. 611, 616, 88 S.Ct. 1335, 1338, 20 L.Ed.2d 182 (1968)), so that "ordinary people can understand what conduct is prohibited." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Section 511, then, survives even the higher level of scrutiny for vagueness required in first amendment cases. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). Section 511 is unconstitutional only because of the unlimited discretion that is allowed the licensing official.[1]

---

1. ACORN also contends that section 511 is unconstitutionally vague because the standards for

issuing a permit are not defined. "A law's vagueness or ambiguity may be responsible for

## III.

■ Section 514 absolutely bans the erection or maintenance of "any building, hut, hotel, shanty, tent or other structure" on city property. ACORN argues that this prohibition is unconstitutional because of its potential application to expressive conduct protected by the first amendment. The erection of some structures does qualify as expressive conduct within the free speech guarantee of the first amendment. *See Students Against Apartheid Coalition v. O'Neil,* 660 F.Supp. at 337; *University of Utah Students Against Apartheid v. Peterson,* 649 F.Supp. 1200, 1202–07 (D.Utah 1986). This conclusion, however, does not necessarily render the ordinance invalid. Section 514, on its face, is not substantially overbroad and is therefore constitutional. The constitutionality of section 514 as applied to particular structures is inappropriate for consideration in this case where only the facial validity of the ordinance is challenged.

■ Conduct that is intended and reasonably perceived to convey a message falls within the free speech guarantee of the first amendment. *See, e.g., Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 294, 104 S.Ct. 3065, 3069, 82 L.Ed. 2d 221 (1984). That the state can regulate such conduct, notwithstanding its communicative element, is obvious: a protestor may convey a strong message by throwing a rock through the window of the White House, but he will be subject to criminal sanction nonetheless. *See* L. Tribe, *American Constitutional Law* § 12–7 at 601 n. 20 (1978).

ACORN relies on the following test stated in *Clark:* "Symbolic expression of this kind may be forbidden or regulated if the conduct itself may constitutionally be regulated, if the regulation is narrowly drawn to further a substantial governmental interest, and if the interest is unrelated to the suppression of free speech." 468 U.S. at 294, 104 S.Ct. at 3069. Reliance on *Clark,* however, is misplaced. *Clark,* like

the other Supreme Court cases involving expressive conduct, is a case challenging the *application* of a regulation. *See, e.g., Clark,* 468 U.S. at 291–92, 104 S.Ct. at 3067–68 (group challenged denial of request to sleep in parks); *United States v. Grace,* 461 U.S. 171, 173–74, 103 S.Ct. 1702, 1705, 75 L.Ed.2d 736 (1983) (plaintiffs challenged enforcement of statute prohibiting picketing on sidewalk in front of the Supreme Court building); *Spence v. Washington,* 418 U.S. 405, 406, 94 S.Ct. 2727, 2728, 41 L.Ed.2d 842 (1974) (defendant challenged conviction for attaching peace symbol to American flag); *Tinker v. Des Moines Indep. Community School Dist.,* 393 U.S. 503, 504, 89 S.Ct. 733, 735, 21 L.Ed.2d 731 (1969) (students challenged suspension from school for wearing black arm bands); *United States v. O'Brien,* 391 U.S. 367, 369–70, 88 S.Ct. 1673, 1675, 20 L.Ed.2d 672 (1968) (defendant challenged conviction for burning draft card). Indeed, the Court has emphasized that in *Grace,* for example, "we declined to invalidate on its face a federal statute prohibiting demonstrations on the Supreme Court grounds and confined our holding to the invalidity of the statute as applied to picketing on the public sidewalks surrounding the building." *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985).

These cases uniformly make clear that the analysis of a facial invalidity challenge differs from the analysis of the constitutionality of the application of an ordinance. Rather than attempting to decide if section 514 could be constitutionally applied to each of the myriad structures that the ordinance could prohibit, we must consider the facial validity of section 514 under a different test: whether the ordinance is substantially overbroad.

Where expressive conduct is involved, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma,*

vesting municipal officials with unguided discretion." *ACORN v. Golden,* 744 F.2d at 747. We have already held that section 511 provides

unlimited discretion to the licensing officials, so in that sense alone section 511 is unconstitutionally vague.

413 U.S. 601, 605, 93 S.Ct. 2908, 2912, 37 L.Ed.2d 830 (1973).

"Substantial overbreadth" is a criterion the Court has invoked to avoid striking down a statute on its face simply because of the possibility that it might be applied in an unconstitutional manner. It is appropriate in cases where, despite some possibly impermissible application, the " 'remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct....' *CSC v. Letter Carriers*, 413 U.S. 548, 580–581, 93 S.Ct. 2880, 2897–2898, 37 L.Ed.2d 796 (1973)." *Parker v. Levy*, 417 U.S. [733], at 760, 94 S.Ct. [2547], at 2563 [ (1973) ] [41 L.Ed.2d 439]. See also *New York v. Ferber*, 458 U.S. 747, 770, n. 25, 102 S.Ct. 3348, 3362, [n. 25] 73 L.Ed.2d 1113 (1982). In such a case, the Court has required a litigant to demonstrate that the statute "as applied" to him is unconstitutional. *Id.*, at 774, 102 S.Ct., at 3364.

*Munson*, 467 U.S. at 964–65, 104 S.Ct. at 2851. The invalidation of a statute for substantial overbreadth is "manifestly, strong medicine" to be employed "sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613, 93 S.Ct. at 2916. We are also admonished that "when considering a facial challenge it is necessary to proceed with caution and restraint, as invalidation may result in unnecessary interference with a state regulatory program." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975).

In *Finzer v. Barry*, 798 F.2d 1450, 1472–74 (D.C.Cir.1986), *cert. granted*, —— U.S. ——, 107 S.Ct. 1282, 94 L.Ed.2d 141 (1987), the District of Columbia Circuit identified two situations in which a statute is substantially overbroad. One instance is where "the statute contains a fundamentally illegitimate predicate for government action." *Id.* at 1473. Several Supreme Court cases have invalidated city ordinances for this reason. *See, e.g., City of Houston v. Hill*, —— U.S. ——, 107 S.Ct. 2502, 2510, 96 L.Ed.2d 398 (1987) (ordinance prohibiting speech that " 'in any manner ... interrupt[s]' " a police officer is substantially overbroad because the Constitution protects the "freedom of individuals verbally to oppose or challenge police action without thereby risking arrest"); *Erznoznik*, 422 U.S. at 210, 95 S.Ct. at 2273 (ordinance prohibiting the showing of films containing nudity at drive-in movie theatres invalid because "the Constitution does not permit government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener or viewer"); *Coates v. City of Cincinnati*, 402 U.S. 611, 612–15, 91 S.Ct. 1686, 1687–89, 29 L.Ed.2d 214 (1971) (ordinance prohibiting an assembly of three or more persons on a public sidewalk from acting in a manner "annoying to persons passing by" facially unconstitutional because "annoyance" cannot serve as a basis for abridging constitutionally protected conduct). The Tulsa ordinance does not suffer from this deficiency. The city's concern for the condition of public property provides a legitimate basis for government action. The city would be acting on a illegitimate basis only if, for instance, it prohibited the erection of structures intended to protest federal policies. An *absolute* ban on structures raises no such problem.

The second situation identified by the court in *Finzer* in which substantial overbreadth occurs is where the government action "was premised on an unsupported assumption that purported to tie its means to its ends." 798 F.2d at 1473. Several cases illustrate this failing. *See, e.g., Board of Airport Comm'rs v. Jews for Jesus, Inc.*, —— U.S. ——, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500 (1987) (resolution banning all "First Amendment activities" in airport is substantially overbroad "because no conceivable governmental interest would justify such an absolute prohibition of speech"); *Village of Schaumberg v. Citizens for a Better Env't*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) (ordinance prohibiting door-to-door or street solicitations by charitable organizations not using at least seventy-five percent of their receipts for charitable purposes is unconstitutionally overbroad because the government's interests were not adequately relat-

ed to the seventy-five percent limit). Tulsa has made no unsupported assumptions in enacting section 514: an absolute prohibition on the erection of structures on city property is related to a concern for the condition of that property. Section 514, then, does not fall within either of the categories of substantially overbroad regulations described in *Finzer.*

■ Nor is the ordinance substantially overbroad within the meaning of *Broadrick* and *Munson.* The possibility of an impermissible application of a law does not in itself mean the law is substantially overbroad. A statute is substantially overbroad only if the number of applications of the statute to protected conduct is substantial in relation to the number of applications to conduct that has no expressive content. *See Munson,* 467 U.S. at 965–66, 104 S.Ct. at 2851–52; *Broadrick,* 413 U.S. at 615–16, 93 S.Ct. at 2917–18; *Pursley v. City of Fayetteville,* 820 F.2d 951, 958 (8th Cir.1987) (Gibson, J., dissenting); *Finzer,* 798 F.2d at 1473; *see also* L. Tribe, *American Constitutional Law* § 12–25 at 713 (1978). The decisive fact in this case is that while section 514's prohibition on the maintenance and erection of buildings and structures on city property admittedly reaches some expressive conduct, the number of such applications is insubstantial compared to the number of applications to non-expressive conduct. Because the vast majority of buildings and structures are erected without any intention to thereby convey a message, section 514 is an ordinance "whose legitimate reach dwarfs its arguably impermissible applications." *Ferber,* 458 U.S. at 773, 102 S.Ct. at 3363. "[W]hatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which [the ordinance's]

sanctions, assertedly, may not be applied." *Broadrick,* 413 U.S. at 615–16, 93 S.Ct. at 2918. We hold that section 514 is not substantially overbroad.

■ ACORN, therefore, must demonstrate that section 514 is unconstitutional as applied to its activities. *See Munson,* 467 U.S. at 965, 104 S.Ct. at 2851; *see also New York v. Ferber,* 458 U.S. 747, 774, 102 S.Ct. 3348, 3364, 73 L.Ed.2d 1113 (1982). It is only in this context that *Clark* would become relevant.[2] But section 514 has not been applied to ACORN. We therefore cannot consider and certainly cannot decide whether section 514 would be unconstitutional as applied to whatever structures ACORN seeks to erect on city property in the future. Having determined that section 514 is not substantially overbroad on its face, we leave a decision regarding its constitutionality as applied to specific forms of symbolic expression for a different day.

ACORN also argues that section 514's absolute ban on the erection of structures on city property in Tulsa is unconstitutionally vague in relation to the provisions in section 511 permitting such structures if a license is first obtained. If the provisions of section 511 are the only basis for finding section 514 vague, our holding that section 511 is unconstitutional eliminates any previously existing conflict and thus moots the vagueness challenge. We therefore hold that section 514 is not unconstitutionally vague.

IV.

■ Finally, ACORN argues that section eight is unconstitutionally vague because it conflicts with section 514. Section

---

**2.** There is an obvious overlap between parts of the *Clark* test and the substantial overbreadth test: both examine the nature of the government's interest and the means by which the government attempts to satisfy that interest. But the *Clark* requirement that the regulation be narrowly drawn to further a substantial government interest is by definition limited to cases involving the application of a regulation to specific expressive conduct. *But see Pursley v. City of Fayetteville,* 820 F.2d at 956–57. The determination that a regulation is narrowly drawn is

made by comparing the governmental interest in proscribing a specific form of conduct with the means employed by the regulation to satisfy that interest. Such an inquiry necessarily demands that a court know what type of conduct is at issue because the governmental interest may differ with the particular conduct involved. For example, Tulsa's interest in prohibiting full-scale models of the Pentagon on city property would be much different than the city's interest in prohibiting a table-top replica of the Pentagon from being displayed in a city park.

eight allows camping on city property in designated places while section 514 seems to prohibit camping on any city property. We must attempt to harmonize these sections, *see, e.g., A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1011 (4th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), especially in light of our obligation to avoid unnecessary constitutional decisions. *See, e.g., Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 341, 346–48, 56 S.Ct. 466, 480, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). We hold that section eight means what it says: camping is allowed in designated areas which are excluded from the operation of section 514. We have no occasion to consider whether these ordinances would be valid if the city were to apply them to the erection of tents in a manner contrary to the plain language of section eight.

### V.

We reverse the decision of the district court that sections 2 and 511 are constitutional. We affirm the decision of the district court that sections 514 and 8 are constitutional.