Kristie EAGON, Through her parent Cindy EAGON; Tammy Hargues, through her parent Raymond E. Hargues; Melinda Hargues, through her parent Judy Hargues; Renee Anderson, through her parents Ted E. Anderson and Carolyn Anderson; Lee Mayberry, Plaintiffs–Appellees, Cross–Appellants,

v.

CITY OF ELK CITY, OKLAHOMA; George Easter, individually and in his official capacity as City Councilman; Don Wham, individually and in his official capacity as City Councilman; Basil Weatherly, individually and in his official capacity as City Councilman; William Brown, individually and in his official capacity as Mayor of Elk City; Guy Hylton, individually and in his official capacity as City Manager of Elk City; Nelda Burch, individually and in her official capacity as Chairman of Christmas in the Park, Defendants–Appellants, Cross–Appellees.

Nos. 94–6335, 94–6336 and 95–6006.

United States Court of Appeals,
Tenth Circuit.

Jan. 3, 1996.

Micheal Salem, Norman, Oklahoma (Lanita Henricksen of Henricksen & Henricksen, El Reno, Oklahoma, with him on the brief) for Plaintiffs–Appellees/Cross–Appellants.

Timothy D. Eisel (Jim T. Priest with him on the brief) of McKinney, Stringer & Webster, P.C., Oklahoma City, Oklahoma, for Defendants–Appellants/Cross–Appellees.

Before ANDERSON, HOLLOWAY, and LUCERO, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendant-appellants the City of Elk City, George Easter, Don Wham, Basil Weatherly, William Brown, Guy Hylton, and Nelda Burch (collectively defendants) appeal a summary judgment in favor of plaintiff-appellees Kristie Eagon, Tammy Hargues, Melinda Hargues, Renee Anderson, and Lee Mayberry (collectively plaintiffs), upholding their First Amendment free speech claim, *inter alia*, (No. 94–6335). Plaintiffs cross-appeal from an order of the district court holding that the individual defendants were entitled to qualified immunity from damages, while injunctive and declaratory relief was granted (No. 94–6336). Defendants also appeal the district court's award of attorney fees in favor of plaintiffs (No. 95–6006). We have jurisdiction pursuant to 28 U.S.C. § 1291.

## I

Ackley Park is a public park in Elk City, Oklahoma. App. at 53. Elk City has given permission for "Christmas in the Park," an event which has been held annually for over seven years in Ackley Park. At Christmas in the Park, churches, individuals, schools, businesses, civic and community groups, and clubs have been allowed to erect displays. *Id.* at 54. In December 1992 plaintiff Mayberry was instructed to take down his display for the Beckham County Teenage Republican Club by Nelda Burch because his sign "conveyed a partisan message." *Id.* The parties agree that Mayberry's display "did not contain obscenity or speech inciting immediate unlawful action or fighting words." *Id.* They also agree that many other messages, including those of "a religious or spiritual nature," are allowed. *Id.*

In November 1993 the city council of Elk City approved the following rules for the 1993 Christmas in the Park:

'CHRISTMAS IN THE PARK' committee, operating under the non-profit organization of the Western Oklahoma Historical Soceity [sic], has been granted permission by the City of Elk City to organize and make all arrangements and decisions for Christmas lighting, displays and placement in the City Park. The project may encompass the entire park area.

The City grants permission with the understaning [sic] this is a project intended to be a City wide effort for the purpose of presenting a scenic holiday beauty for the enjoyment of the community as well as a possible economic boost to the City.

The City further understands that the committee will encourage participation by individuals, schools, churches, businesses, civic and community clubs or groups of non-partisan origin from the Elk City area.

Commercialism in the park is discouraged but will be left to the discretion and decision of the committee.

Participation credit or memorial signs shall not be larger than 15 inches high and 24 inches wide.

Dean and Nelda Burch are recognized as Chairmen of this event.

City Park Commission to be oversight of all activities in the Park associated with "Christmas in the Park", with final approval to rest with the City Manager.

PAST [sic] AND APPROVED this 1st day of November, 1993.

App. at 326.

In November 1993, the Beckham County Teenage Republican Club (the Club), to which plaintiffs belonged, was not allowed a space in the park to place its display. *Id.* at 55. The display included two panels showing Joseph, Mary and Jesus on the right panel and the three wise men on the left panel with the phrase "It Came to Pass in the City of David a Savior was born" written across the two panels. There was a "credit sign" at the bottom which read "Merry Christmas from the Beckham County Teenage Republican Club." It is this sign which is at issue in this case.

Defendant Nelda Burch testified that the reason the Club's sign was excluded was that it was "partisan in nature." App. at 55. As an alternative to placing their display in Christmas in the Park, the city manager offered the Club space in Downtown Elk City where other Christmas displays were placed. The Club did not avail itself of this alternative. Instead plaintiffs brought this suit under 42 U.S.C. § 1983, alleging that defendants violated their rights of free speech and equal protection under the First and Fourteenth Amendments.[1] They sought injunctive and declaratory relief, damages, and attorney fees.

On December 3, 1993, a hearing was held on plaintiffs' request for a preliminary injunction. On December 6 the district court granted a preliminary injunction. The parties subsequently filed cross-motions for summary judgment. On June 22, 1994, the judge granted summary judgment for plaintiffs, but held that the individual defendants were entitled to qualified immunity from damages. *Id.* at 359–69.

On August 9, 1994, the judge entered a declaratory judgment in favor of plaintiffs

---

1. No Establishment Clause challenge is made to "Christmas in the Park" in this case.

and against defendants, stating that "the actions of the Defendants in excluding Plaintiffs from participation in the program 'Christmas in the Park' constituted a violation of the *Free Speech Clause* of the *First Amendment* and the *Equal Protection Clause* of the *Fourteenth Amendment* of the *Constitution of the United States*." App. at 370–71 (emphasis in original).

The district judge also enjoined defendants from excluding plaintiffs "from any participation or presentation in the annual program 'Christmas in the Park' or any like or similar successor program, based upon the content of the expression used in such participation or presentation by Plaintiffs or their successors as members of the Teenage Republican Club of Beckham County." *Id.* at 371. The judge awarded plaintiffs damages in the amount of one dollar against Elk City and the individual defendants in their official capacities, together with attorney fees, but held that the individual defendants were entitled to qualified immunity from damages in their individual capacities. Defendants appeal from the adverse judgment. Plaintiffs cross-appeal from the grant of qualified immunity for the individual defendants.

## II

■ We review a grant of summary judgment *de novo*, applying the same legal standard as the trial court. *Bowdry v. United Airlines, Inc.*, 58 F.3d 1483, 1486 (10th Cir.1995). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). We view the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Bowdry*, 58 F.3d at 1486.

Our review of the record, the orders of the district judge, and the parties' submissions reveal that there are no material facts in dispute as to the constitutional claims. Therefore the principal issue for us is the legal question whether the exclusion of plaintiffs' sign violated their rights to free speech and equal protection, as the district judge concluded.

## A

### Was Plaintiffs' Sign Protected Speech?

The First Amendment provides in part that "Congress shall make no law ... abridging the freedom of speech...." This right has long been made applicable to the states through the Fourteenth Amendment. *See City of Ladue v. Gilleo*, —— U.S. ——, —— n. 1, 114 S.Ct. 2038, 2040 n. 1, 129 L.Ed.2d 36 (1994) (citing *Gitlow v. New York*, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925)).

■ Defendants first argue that plaintiffs' credit sign is not protected speech: "[s]ince [plaintiffs'] proposed greeting was not intended to be 'communicative' in the First Amendment sense of the term, their greeting is not 'protected speech.'" Appellants' Brief at 6. Defendants cite *Spence v. Washington*, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (per curiam), and *ACORN v. City of Tulsa*, 835 F.2d 735 (10th Cir.1987), for the proposition that "there must be *both* intent *and* perception [that a message is being conveyed] in order for conduct to be considered 'protected speech.'" Appellants' Brief at 6 (emphasis in original). Defendants contend that although plaintiffs' conduct was perceived to display a partisan message, there was no intent to make a political statement. They point to testimony by plaintiffs Mayberry and Eagon that they were not trying to convey or communicate in any way a message from the Republicans or to make a political statement. App. at 126, 151–52. Therefore, the argument goes, the plaintiffs' sign is not protected speech under the First Amendment.

Defendants misread *Spence* and *ACORN*. Both cases were concerned with expressive conduct—non-written, non-oral conduct which may be entitled to protection as speech under the First Amendment. In *Spence*, the appellant had hung an American flag, which he owned, with a peace symbol taped on it, upside down from the window of his apartment as a protest against the invasion of Cambodia and the deaths at Kent State. He was convicted of violating Washington's "improper use" statute which forbade

"[p]lac[ing] or caus[ing] to be placed any word, figure, mark, picture, design, drawing or advertisement of any nature upon any flag, standard, color, ensign or shield of the United States...." 418 U.S. at 407, 94 S.Ct. at 2728–29.

■ The Supreme Court reversed Spence's conviction, holding that his actions constituted expression protected under the First Amendment. The Court noted that the State conceded, as did the Washington Supreme Court, that appellant engaged in a form of communication. *Id.* at 409, 94 S.Ct. at 2729–30. Nevertheless because he chose not to communicate his views through printed or spoken words, it was therefore necessary to determine whether his activity was sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments. *Id.* at 409, 94 S.Ct. at 2729–30. It was because Spence's message was not conveyed "through printed or spoken words" that the Court had to determine whether flying the flag with the symbol "was sufficiently imbued with elements of communication" to be constitutionally protected speech. Implicit in this statement is the principle that perception and intent analysis is not necessary where printed or spoken words are used, like those involved here.

*ACORN v. City of Tulsa* is likewise inapposite. There we addressed whether four Tulsa city ordinances were facially constitutional. While we noted that "[c]onduct that is intended and reasonably perceived to convey a message falls within the free speech guarantee of the first amendment," 835 F.2d at 742, it is clear that we were speaking of symbolic expression, not of the spoken or written word. The plaintiffs in *ACORN* brought suit to challenge the ordinances after seeking permission to erect tents at Springdale Park in Tulsa as part of ACORN's nationwide demonstrations known as "Reagan Ranches." *ACORN* dealt with the erection of tents, which if expression at all, is symbolic expression. Like *Spence*, *ACORN* must be read in context—as providing an analytical framework for determining whether certain conduct constitutes expression for First Amendment purposes. Again

the "intent and perception" analysis is unnecessary where obvious written or spoken expression like plaintiffs' sign here is involved.

Nor are we persuaded by the statements elicited during the cross-examination of some plaintiffs that they were not trying to convey a message from the Republicans or a political statement. We feel it is clear that written or spoken words like the content of plaintiffs' sign constitute expression for the purposes of the First Amendment. We therefore agree with the district court that the sign "Merry Christmas from the Beckham County Teenage Republican Club" was "speech" entitled to protection under First Amendment principles. *See Cannon v. City and County of Denver,* 998 F.2d 867, 871 (10th Cir.1993) (Signs carried by protestors at abortion clinic invoked First Amendment considerations); Laurence H. Tribe, *American Constitutional Law* § 12–7 at 830 (2d ed. 1988).

## B

### Is Ackley Park a Public Forum?

■ Defendants argue that under *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985), the forum to be analyzed is the event, "Christmas in The Park," and not the place, Ackley Park. Plaintiffs, on the other hand, say that the park is the relevant forum, citing *United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). The district judge concluded that "Ackley Park during the 'Christmas in the Park' event is a public forum." App. at 362, Order of June 24, 1994, at 4.

In his order granting plaintiffs' motion for summary judgment, the judge found that no material factual dispute exists to preclude the entry of summary judgment. He noted that the defendants' principal challenge to plaintiffs' factual statement consists of their contention that the plaintiffs were denied access to the park because the Beckham County Teenage Republican Club is a partisan club, not because of the content of their sign, which plaintiffs assert conveys only a greeting, not a political message. The court found that distinction was illusory rather than material, *id.* at 2 n. 2, and we have

dismissed earlier the testimony disavowing any intent to convey a partisan message.

The district judge carefully reviewed the principal decisions of the Supreme Court identifying three types of forums on public property. Citing *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45–46, 103 S.Ct. 948, 954–956, 74 L.Ed.2d 794 (1983), the first type of forum identified was public forums that "by long tradition or by government fiat have been devoted to assembly and debate." *Id.* at 45–46, 103 S.Ct. at 954–956. The second category consists of public property which the state has opened for use by the public as a place for expressive activity. *Id.* at 45, 103 S.Ct. at 954–55. The judge noted that in this second type of public forum the state is bound by the same First Amendment standards as those applicable to a traditional public forum. The third type of forum, not pertinent here, is a nonpublic forum.

We agree with the holding of the district judge that city parks are "quintessential public forums....", Order at 4, under *United States v. Grace*, 461 U.S. at 177, 103 S.Ct. at 1706–07, and *Perry Education*, 460 U.S. at 45, 103 S.Ct. at 954–55. In *Perry Education*, the Court staked out the parameters of "public places" for analysis under the First Amendment:

> In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the State to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 963–64, 83 L.Ed. 1423 (1939). In these quintessential public forums, the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. The State may also enforce regulations of the time, place, and

manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

> A second category consists of public property which the State has opened for use by the public as a place for expressive activity. The Constitution forbids a State to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place. Although a State is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum. . . .

> Public property which is not by tradition or designation a forum for public communication is governed by different standards.

460 U.S. at 45–46, 103 S.Ct. at 954–956 (citations omitted).

*Perry Education* held that limitations on access to school mail facilities, which denied access to the facilities to a rival union while granting it to another which was the exclusive bargaining representative for the district's teachers, was not violative of the First Amendment. The Court held that the facilities were not a "limited public forum" even though the system had been opened for periodic use by church and civic organizations, and the rival union had been allowed to use the mail facilities on an equal footing with the bargaining representative before its certification. Instead the Court held that the facilities came within the third category, the nonpublic forum, and that the restriction of them was reasonable and valid. *Id.* at 46, 53, 103 S.Ct. at 955, 959.

In *Grace*, the Court addressed the constitutionality of 40 U.S.C. § 13k, which prohibited, among other things, the display of any flag, banner, or device designed or adapted to bring into public notice any party, organization, or movement in the Supreme Court building and on its grounds. The Court held the statute unconstitutional under the First Amendment as applied to the sidewalks surrounding the building. The opinion noted again the parameters of "public places" for purposes of First Amendment analysis:

It is also true that "public places" historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be "public forums." In such places, the government's ability to permissibly restrict expressive conduct is very limited: the government may enforce reasonable time, place, and manner regulations as long as the restrictions "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Additional restrictions such as an absolute prohibition on a particular type of expression will be upheld only if narrowly drawn to accomplish a compelling governmental interest.

461 U.S. at 177, 103 S.Ct. at 1707 (citations omitted).

We are convinced, as was the district judge,[2] that Ackley Park during the "Christmas in the Park" event was a public forum. We therefore turn to the question whether the exclusion of plaintiffs' display from this traditional public forum violated the First and Fourteenth Amendments.

## III

### THE FREE SPEECH CLAIM

■ In the traditional public forum, content-based restrictions on speech are valid only if necessary to serve a compelling state interest and if narrowly drawn to achieve that end. *Perry Education*, 460 U.S. at 45, 103 S.Ct. at 954–55 (citing *Carey v. Brown*, 447 U.S. 455, 461, 100 S.Ct. 2286, 2290–91, 65 L.Ed.2d 263 (1980)). Content-neutral regulations of the time, place, or manner of expression are valid if they "are

narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Education*, 460 U.S. at 45, 103 S.Ct. at 955.

■ Defendants argue that the prohibition on displays from partisan groups is content-neutral: "[t]he limitation of only allowing non-partisan groups to participate is applied evenhandedly without regard to the content of a group's message." Appellants' Brief at 14. Defendants rely on *Heffron v. International Soc. for Krishna Consciousness*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), where the Supreme Court upheld a ban on the distribution of literature and the solicitation of donations at the Minnesota State Fair in areas not assigned for those activities. Their reliance is misplaced. The solicitation and distribution ban in *Heffron* applied to *all* groups and thus did not discriminate based on the content of the groups' expression. It was therefore a content-neutral regulation of the manner of expression. That is not the case here.

Defendants concede that plaintiffs' request to display the sign reading "Merry Christmas from the Beckham County Teenage Republican Club" was rejected "due to the fact that it came from a partisan group." Appellants' Brief at 1.[3] Denying partisan groups the same opportunity to participate in Christmas in the Park as non-partisan groups discriminates against the partisan groups based on the "partisan" content of their expression. Such discrimination is content-based, not content-neutral. *See* App. at 367 n. 9 (district judge's order stating that city's rule was not content-neutral). *Cf. Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d 352

---

**2.** In further support of the judge's holding that Ackley Park was a "public forum," we note that in an affidavit of defendant Hylton it was stated that "[d]uring 'Christmas in the Park,' Ackley Park is unavailable to any groups for other purposes and is specifically dedicated and reserved for the 'Christmas in The Park' festivity." App. at 324 (Exhibit 2 to Defendants' Brief in Opposition to Plaintiffs' Motion for Summary Judgment). The same statement was made below in defendants' uncontroverted facts in support of their motion for summary judgment. App. at 305.

**3.** The term "partisan" was not defined in the City's rules. Nor did testimony at the hearing pinpoint a definition of "partisan." What can be gleaned from the testimony at the hearing is that Committee Co-Chair Nelda Burch treated the term "partisan" as referring to something which could be perceived as controversial or as suggesting controversy. *See* App. at 186. The district judge noted that according to Nelda Burch's testimony "partisan" was "anything controversial or offensive." *Id.* at 367.

(1993) (invalidating as an impermissible content-based discrimination the exclusion of religious groups from the use of school facilities after school hours, where similar non-religious groups had been allowed use of facilities).

■ Thus defendants' concession that they excluded the Teenage Republicans' display because they are a "partisan" group is in effect a concession that defendants discriminated against plaintiffs based on the content of their expression. As noted, with respect to a traditional public forum, such content-based discrimination is permissible under the Constitution only if it is narrowly tailored and serves a compelling government interest. *Perry Education*, 460 U.S. at 45, 103 S.Ct. at 954–55. Defendants have not demonstrated a compelling justification for excluding the plaintiffs from Christmas in the Park.

In approving Christmas in the Park, the City stated "this is a project intended to be a City wide effort for the purpose of presenting a scenic holiday beauty for the enjoyment of the community as well as a possible economic boost to the City." App. at 326. On the reasons for excluding "partisan" groups, Nelda Burch testified that:

> [O]ur feeling is that, once you let some partisan group in, then—you ask any partisan group in, then you have established an area where we might—where others might want to enter.
>
> . . . .
>
> . . . . If you let any one partisan group in, it was our feeling that—that we would open it for any others.
>
> . . . .
>
> [The exclusion of partisan groups was based] [o]n a general feeling that it is not the time or the place for it, that there are plenty of other times in the year for all of us to express our views and opinions in partisan areas, and that we would just like for this to be a happy, loving, unity type event.
>
> . . . .

. . . . Our intention is that we do not think that it is in the best interest of the event or has any connection with the event.

> . . . .
>
> [Allowing partisan groups to participate] would have a possibility—any partisan group would open up an opportunity for sides and a possibility cf people to view things as—
>
> A partisan, by nature, has two sides to something, and, therefore, then you would be putting something in your park that could create an argument at a time of the year when love and unity are the things that we're striving.

App. at 64–66.

Defendants assert that "[i]t is certainly reasonable for the Christmas in the Park Committee to promote unity at Christmas by denying access to partisan groups." Appellant's Brief at 13. From this assertion, Ms. Burch's testimony, and the Christmas in the Park regulations, there was a persuasive showing that the purpose of Christmas in the Park was to promote a scenic holiday event in a spirit of unity and harmony for the community during the Christmas season. We accept these stated and worthy intentions. However, we are convinced they do not demonstrate that the defendants' challenged conduct was "necessary to serve a *compelling* state interest and that it [was] narrowly drawn to achieve that end," *Perry Education*, 460 U.S. at 45, 103 S.Ct. at 954–55 (emphasis added), which must be shown to justify a content-based exclusion. Therefore we hold that the defendants' exclusion of plaintiffs' sign violated the First and Fourteenth Amendments, and we uphold the summary judgment in favor of the plaintiffs.[4]

## IV

## QUALIFIED IMMUNITY

The district judge concluded that "although [defendants'] conduct violated the First and Fourteenth Amendments, the law was not *clearly* established at the time of the violation." App. at 369 (emphasis in origi-

---

4. Because we hold that plaintiffs' First Amendment right to free speech was violated, we do not reach their claim under the Equal Protection Clause.

nal). He therefore granted defendants' motion for summary judgment with respect to the individual defendants' claims of qualified immunity. In their cross-appeal (No. 94–6336), plaintiffs contend that the district judge erred in granting qualified immunity to the defendants in their individual capacities.

### A

### Defendant Nelda Burch's Immunity Status

 Plaintiffs argue that defendant Nelda Burch is not entitled to qualified immunity because she was a private individual acting under the authority of the City rather than a city official. We disagree.

In *Wyatt v. Cole,* 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992), the Supreme Court held that qualified immunity is not available for private defendants charged with § 1983 liability for invoking state replevin, garnishment, and attachment statutes later declared unconstitutional. *Id.* at 168–69, 112 S.Ct. at 1833–34. In so holding, the Court "conclude[d] that the rationales mandating qualified immunity for public officials are not applicable to private parties." *Id.* at 167, 112 S.Ct. at 1832–33. The Court stated that

[P]rivate parties hold no office requiring them to exercise discretion; nor are they principally concerned with enhancing the public good. Accordingly, extending *Harlow* qualified immunity to private parties would have no bearing on whether public officials are able to act forcefully and decisively in their jobs or on whether qualified applicants enter public service. Moreover, unlike with government officials performing discretionary functions, the public interest will not be unduly impaired if private individuals are required to proceed to trial to resolve their legal disputes. In short, the nexus between private parties and the historic purposes of qualified immunity is simply too attenuated to justify such an extension of our doctrine of immunity.

*Id.* at 168, 112 S.Ct. at 1833–34. Plaintiffs here argue that *Wyatt* forecloses the possibility of qualified immunity for private defendant Nelda Burch.

In *Warner v. Grand County,* 57 F.3d 962 (10th Cir.1995), however, we interpreted *Wyatt* as not foreclosing the possibility of qualified immunity for some private defendants. In *Warner* two female plaintiffs filed a § 1983 action challenging the constitutionality of strip searches to which they had been subjected. A female dispatcher and Ms. Robin Parker, a private individual, performed the searches of the two plaintiffs. The plaintiffs there argued that *Wyatt* precluded Ms. Parker from receiving qualified immunity.

 In determining that Ms. Parker was entitled to qualified immunity, *Warner* relied on the reasoning of the Seventh and Eleventh Circuits in cases after *Wyatt*. *See Sherman v. Four County Counseling Center,* 987 F.2d 397 (7th Cir.1993); *Burrell v. Board of Trustees of Georgia Military College,* 970 F.2d 785 (11th Cir.1992), *cert. denied,* 507 U.S. 1018, 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993). We noted that the Eleventh Circuit contrasted two types of cases involving private § 1983 defendants. In the first, "private defendants were permitted to assert qualified immunity when fulfilling duties under a government contract or following a court order." *Warner,* 57 F.3d at 965. In cases of this first type where "private defendants fulfill a state official's request to perform a governmental function, denial of qualified immunity would undermine its underlying purpose." *Id.* at 966.

The second type of case involved " 'private defendants who invoke[ ] state law in pursuit of private ends.' " *Warner,* 57 F.3d at 966 (quoting *Sherman,* 987 F.2d at 405). We recognized that in *Sherman* the Seventh Circuit held that *Wyatt* barred qualified immunity only in this second type of case. Because Ms. Parker's participation in the strip searches fell into the first category of cases, we held that she was entitled to qualified immunity. *Id.* at 967. Thus, the rule in this circuit is "that a private individual who performs a government function pursuant to a state order or request is entitled to qualified immunity if a state official would have been entitled to such immunity had he performed the function himself." *Id.*

Because defendant Nelda Burch was not "invok[ing] state law in pursuit of private ends," *id.* at 966, *Wyatt* is inapplicable. Instead, Ms. Burch was performing a government function pursuant to a government request—determining what displays would, and would not, be allowed at Christmas in the Park. Under *Warner,* she is entitled to qualified immunity "if a state official would have been entitled to such immunity had he performed the function himself." *Id.* at 967. Therefore, we will consider defendant Nelda Burch's claim of qualified immunity along with those of the city officials.

**B**

**Are Defendants Entitled to Qualified Immunity Here?**

■ Plaintiffs claim that the individual defendants (Easter, Wham, Weatherly, Brown, Hylton, and Nelda Burch) violated their clearly established First Amendment rights by excluding their display; therefore the district judge erred in granting qualified immunity to them.

■ In *Ramirez v. Oklahoma Dept. of Mental Health,* 41 F.3d 584, 592 (10th Cir. 1994), we explained: "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)." "Once a public official raises a qualified immunity defense, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's conduct violated the law; and (2) demonstrating that the relevant law was clearly established when the alleged violation occurred." *The Gehl Group v. Koby,* 63 F.3d 1528, 1533 (10th Cir.1995).

■ As noted, plaintiffs have persuaded us that defendants violated their First Amendment right of free speech. We must now determine whether that right was clearly established at the time the violation occurred. *Id.* "If the law ... was not clearly established [at the time of the violation], an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade the conduct not previously identified as unlawful." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

Defendants assert that it was not clearly established that the exclusion of the plaintiffs' display under the Christmas in the Park rules violated the First Amendment. We agree. The existence of divergent views as to the nature of the forum, *compare Community for Creative Non–Violence v. Hodel,* 623 F.Supp. 528 (D.D.C.1985), *with Irish Subcomm. of the Rhode Island Heritage Comm'n v. The Rhode Island Heritage Comm'n,* 646 F.Supp. 347 (D.R.I.1986), indicates that whether Ackley Park during the Christmas in the Park event was a nonpublic or a public forum was not clearly established in November 1993. Had the park been a nonpublic forum, then the exclusion of plaintiffs' display would have been constitutional if the ban on displays by partisan groups was reasonable and viewpoint neutral. *Perry Education,* 460 U.S. at 46, 103 S.Ct. at 955–56. Under this less stringent standard, it is arguable that the exclusion of partisan groups like plaintiffs would have been constitutionally acceptable, *see Cornelius,* 473 U.S. at 795, 105 S.Ct. at 3445 (upholding a ban from a charity fund drive, a nonpublic forum, of "[a]gencies that seek to influence the outcomes of elections or the determination of public policy through political activity or advocacy, lobbying, or litigation on behalf of parties other than themselves"), although we ultimately conclude that the stricter standard of a compelling state interest and narrowly tailored restrictions applies here.

Therefore we are not persuaded that the exclusion of plaintiffs' display violated clearly established public forum doctrine and affirm the district judge's grant of qualified immunity to the individual defendants.

**V**

**ATTORNEY FEES**

■ On December 1, 1994, the district judge issued an order granting plaintiffs' application for an award of attorney fees pursuant to 42 U.S.C. § 1988. App. at 7. Defendants appeal that award (No. 95–6006),

arguing that because "the District Court's Order regarding the constitutional issues was erroneous, ... the subsequent award of attorneys' fees and costs is in error." Appellants' Brief in Chief at 1. However, in their appeal of the award of attorney fees, defendants rely solely on their position in No. 94–6335 that the exclusion of plaintiffs' display did not violate the First Amendment.

Thus, defendants' position in assailing the award of fees rests solely on the merits of their appeal of the First Amendment issues. Because we have held that their actions did indeed violate plaintiffs' First Amendment right to free speech, defendants' challenge to the award of fees to plaintiffs necessarily fails. We therefore affirm the award of attorney fees to plaintiffs.

## VI

In sum, we **AFFIRM** the grant of summary judgment for plaintiffs on their First Amendment free speech claim, the declaratory and injunctive relief granted thereon, the grant of qualified immunity to the individual defendants, and the award of attorney fees to the plaintiffs.

**IT IS SO ORDERED.**