OUTDOOR SYSTEMS, INC., Plaintiff,

v.

The CITY OF LENEXA, KANSAS, Defendant.

No. Civ.A. 98–2534–KHV.

United States District Court, D. Kansas.

July 26, 1999.

Edward R. Spalty, Armstrong Teasdale LLP, Kansas City, MO, David H. Flint, Mark W. Forsling, Schreeder, Wheeler & Flint, LLP, Atlanta, GA, for Plaintiff.

David M. Cooper, Rebecca A. Swanwick, City of Lenexa, Legal Department, Lenexa, KS, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Outdoor Systems, Inc., an outdoor advertising company, leases billboards throughout the Kansas City metropolitan area. Outdoor Systems filed suit against the City of Lenexa, Kansas, a suburb of Kansas City, alleging that its sign ordinance signs is unconstitutional. The matter is before the Court on *Defendant's Motion For Summary Judgment* (Doc. #30) filed May 24, 1999 and *Plaintiff's Motion For Summary Judgment* (Doc. #32) filed May 24, 1999. After carefully considering the parties' briefs, the Court finds that both motions should be sustained in part and overruled in part.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### Factual Background

The following facts are uncontroverted or deemed admitted for purposes of the instant motions.

Outdoor Systems, Inc. is a Delaware corporation which conducts an off-premise outdoor advertising business in the Kansas City metropolitan area. The City of Lenexa has enacted certain zoning regulations which govern, *inter alia*, the erection

and maintenance of signs throughout the city (the "sign ordinance").

Plaintiff wants to erect permanent, off-premise, 14′ × 48′ outdoor advertising signs, *i.e.* billboards, on commercial and industrial property within the City of Lenexa. The signs are expected to carry commercial, noncommercial and political messages. The sign ordinance prohibits "off-site" signs in all zoning districts of the city. An "off-site sign" is defined as "[a]ny sign which directs attention to a business, commodity, service, product or activity not conducted, sold, offered or available on the premises where the sign is erected or to which it is affixed." *See* § 4–1E–3(G).

The sign ordinance prohibits any type of sign that it does not expressly permit. *See id.* § 4–1E–3. Generally, a person who wants to erect a sign in the City must first obtain a permit. *See id.* § 4–1E–8. Some types of signs, including political signs and political campaign signs, are exempt from the permit requirement. *See id.* § 4–1E–4. Any permitted sign, regardless of type or location, may contain noncommercial speech in lieu of any other speech. *See id.* § 4–1E–3.

The sign ordinance provides that "[p]olitical signs may be permitted on any property of the same size as allowed for a real estate sign. Political campaign signs must be removed within 7 days after the election or campaign issue has been decided." *See id.* § 4–1E–4(I).

The Sign Ordinance states that the legislature enacted the ordinance for the following purposes:

A. Regulation and control of all advertising and identification signs or attention attracting devices placed for exterior observation in order to preserve, protect and promote the public health, safety and general welfare of the residents of the City.

B. Prevent an adverse community appearance from the unrestricted use of signs or attention-attracting devices by providing a flexible, creative, fair, comprehensive and enforceable set of regulations that will foster a high quality, aesthetic, visual environment for Lenexa, enhancing it as a place to live and do business.

C. Recognition of the business community's need for adequate business identification and advertising communication by improving the readability and, therefore, the effectiveness of signs or attention-attracting devices, by preventing their improper placement, over concentration, excessive height, area and bulk and by limiting such items as illumination or animation.

D. Ensuring that the public is not endangered or distracted by the unsafe, disorderly, indiscriminate or unnecessary use of signs and attention-attracting devices, including the promotion of traffic safety by reducing the visual distraction of motorists.

E. Regulating the size, location and content of commercial signage in order to maximize its effectiveness in directing the public to specific buildings and facilities, while meeting the aesthetic goals of the community.

F. Protection of property values by enhancement of the harmony between residential, commercial and industrial uses by reducing visual clutter and preventing blighting influences.

G. Coordination of the type, placement and physical dimensions of signs within the different land use zoning districts.

H. Acknowledgment of the differing design concerns and needs for signage in certain specialized areas such as freeway frontages, tourist areas and master planned developments.

*See id.* § 4–1E–2.

### *Analysis*

### I. Restrictions On Noncommercial Speech

Signs are a form of expression protected by the First Amendment. *See City of*

*Ladue v. Gilleo*, 512 U.S. 43, 48, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994).[1] As an initial matter, the Court notes the Supreme Court's opinion in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), which addressed a sign ordinance similar to the one adopted by the City of Lenexa. In *Metromedia*, the city ordinance generally prohibited outdoor advertising display signs. 453 U.S. at 493–94, 101 S.Ct. 2882. It made exceptions, however, for onsite signs; government signs; signs at public bus stops; signs manufactured, transported, or stored within the city, if not used for advertising purposes; commemorative historical plaques; religious symbols; signs within shopping malls; for sale and for lease signs; signs on public and commercial vehicles; signs depicting time, temperature and news; approved temporary, off-premises, subdivision directional signs; and temporary political campaign signs. 453 U.S. at 494–95, 101 S.Ct. 2882. "Under this scheme, on-site commercial advertising is permitted, but other commercial advertising and noncommercial communications using fixed-structure signs are everywhere forbidden unless permitted by one of the specified exceptions." 453 U.S. at 495–96, 101 S.Ct. 2882.

A plurality of the Supreme Court held that San Diego could choose to value one kind of commercial speech, onsite advertising, more than another kind of commercial speech, offsite advertising. 453 U.S. at 512, 101 S.Ct. 2882. The Supreme Court stated that "the city could reasonably conclude that a commercial enterprise—as well as the interested public—has a stronger interest in identifying its place of business and advertising the products or services available there than it has in using or leasing its available space for the purpose of advertising commercial enterprises located elsewhere." *Id.* In other words, San Diego does not have to treat all commercial interests equally. *Id.*

The Supreme Court took a quite different view, however, of San Diego's restrictions on noncommercial speech. It noted that "[t]he fact that the city may value commercial messages relating to onsite goods and services more than it values commercial communications relating to off-site goods and services does not justify prohibiting an occupant from displaying its own ideas or those of others." 453 U.S. at 513, 101 S.Ct. 2882. San Diego's ordinance contained a broad exception for on-site commercial advertisements, but it omitted a similar exception for noncommercial speech. The Supreme Court therefore held that because noncommercial speech is entitled to greater protection than commercial speech, the city could not conclude that communication of commercial information was entitled to greater protection than noncommercial information. *Id.* The Supreme Court stated:

Although the city may distinguish between the relative value of different categories of commercial speech, the city does not have the same range of choice in the area of noncommercial speech to evaluate the strength of, or distinguish between, various communicative interests. *See Carey v. Brown*, 447 U.S. at 462, 100 S.Ct. at 2291; *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 96, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972). With respect to noncommercial speech, the city may not choose the appropriate subjects for public discourse: "To allow a government the choice of permissible subjects for public debate would be to allow that government control over the search for political truth." *Consolidated Edison Co.*, 447 U.S. at 538, 100 S.Ct. at

---

1. Plaintiff challenges the Lenexa Sign Ordinance under both the First Amendment and Section 11 of the Kansas Bill of Rights. Courts generally apply the same analysis to these two constitutional provisions. *See Case v. Unified School Dist. No. 233*, 908 F.Supp. 864, 876 (D.Kan.1995) (citing *Unified School Dist. No. 503 v. McKinney*, 236 Kan. 224, 234–35, 689 P.2d 860 (1984)); *State v. Russell*, 227 Kan. 897, 899, 610 P.2d 1122, 1125, *cert. denied*, 449 U.S. 983, 101 S.Ct. 400, 66 L.Ed.2d 245 (1980). Accordingly, the Court will apply federal case law to both free speech provisions.

2333. Because some noncommercial messages may be conveyed on billboards throughout the commercial and industrial zones, San Diego must similarly allow billboards conveying other noncommercial messages throughout those zones. 453 U.S. at 514–15, 101 S.Ct. 2882.

Outdoor Systems claims that the Lenexa sign ordinance is unconstitutional under *Metromedia* because it favors commercial speech over noncommercial speech. In particular, plaintiff argues that the city has impermissibly concluded that communication of commercial information regarding onsite subjects is of greater importance than the communication of certain noncommercial messages. Although the ordinance prohibits all signs which are not specifically permitted, it also provides that "any permitted sign is allowed to contain noncommercial speech in lieu of any other speech." *See* § 4–1E–3. Plaintiff argues that this provision is insufficient because an applicant for a noncommercial sign must first obtain a permit for another type of sign so that it is "permitted" sign. The City argues that the term "permitted" as used in this provision does not mean that a permit is required, only that the sign is "allowed" either by permit or by statute.

■ To interpret this provision, the Court must begin with the words of the ordinance. *See United States v. James*, 478 U.S. 597, 604, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986). The Court assumes that "the legislative purpose is expressed by the ordinary meaning of the words used." *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982). Accordingly, "the language of the statute itself is controlling when it is sufficiently clear in context," *Blue Cross Ass'n v. Harris*, 664 F.2d 806, 809 (10th Cir.1981), (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 201, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)), and must prevail absent a conflict with the statute's legislative history. *Aaron v. Securities & Exch. Comm'n*, 446 U.S. 680, 699–700, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980).

■ "Permitted" is commonly understood to mean "allowed." Webster's Third New Int'l (Unabridged) Dictionary (1986) at 1683. In the context of the sign ordinance, "permitted" means both allowed by permit and allowed as a matter of right. Indeed, the ordinance lists a number of signs that are allowed even though no permit is required. *See* § 4–1E–4 (traffic-control signs, flags, directional/instructional signs, public notice signs, memorial signs, art works, required notice, address signs, political signs, public notice, window signs, real estate signs, construction signs, garage sale signs, menu-boards, special event signs, under-canopy/awning signs, incidental identification signs, signs on machinery and equipment, signs on vehicles, other governmental signs, home occupation signs and now hiring signs). In the list of signs exempt from the permit requirement, the ordinance uses the word "permitted" several times to mean allowed as a matter of right. *See, e.g.,* § 4–1E–4 (B), (C), (K). Moreover, the provision at issue here uses the term "permitted" both shortly before and shortly after the disputed phrase to mean allowed either by permit or as a matter of right. The sign ordinance provides that "[a]ny sign or attention-attracting device not specifically *permitted* is prohibited; provided however, that any *permitted* sign is allowed to contain non-commercial speech in lieu of any other speech. Unless otherwise *permitted* by this Article, prohibited signs and attention-attracting devices include...." *See* § 4–1E–3, Preamble (emphasis added). In context, the sign ordinance provides that if the City has issued a permit for a sign or if a sign is allowed by statute without a permit, an individual may substitute noncommercial copy for any other copy.

■ Based on the Court's interpretation of Section 4–1E–3, the ordinance does not impermissibly favor onsite commercial speech over certain forms of noncommercial speech. All noncommercial messages are allowed to the extent that any commercial speech or other noncommercial speech

may be included on a particular type of sign or in a particular location. By including such a provision, the City has effectively addressed the Supreme Court's view that all noncommercial speech must be allowed on signs to the extent a city permits any forms of commercial speech on such signs.[2] *See, e.g., Outdoor Sys., Inc. v. City of Mesa,* 997 F.2d 604, 611 (9th Cir. 1993) (ordinances which allow noncommercial messages in lieu of any other message satisfy free speech requirements); *National Adver. Co. v. City & County of Denver,* 912 F.2d 405, 408–10 (10th Cir.1990) ("the preference for noncommercial over commercial advertising under the new ordinance is the kind of underinclusiveness the First Amendment tolerates"); *Georgia Outdoor Adver., Inc. v. City of Waynesville,* 833 F.2d 43, 46 (4th Cir.1987) (upholding ordinance similar to ones in *City of Mesa, supra* ).[3]

For these reasons, the Court finds that the Lenexa sign ordinance does not impermissibly favor commercial speech over noncommercial speech. Defendant's motion for summary judgment on this issue is sustained and plaintiff's motion for summary judgment is overruled.

## II. Restrictions On Commercial Speech

■ The Supreme Court has set forth the following test to evaluate the validity of commercial speech regulations:

(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4)

reaches no further than necessary to accomplish the given objective.

*Metromedia,* 453 U.S. at 507, 101 S.Ct. 2882 (citing *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 563–66, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980)). The first part of the *Central Hudson* test is not at issue as plaintiff has brought a facial challenge to the Lenexa ordinance. *See National Advertising,* 912 F.2d at 409. Moreover, defendant concedes for purposes of its motion that plaintiff's proposed speech concerns a lawful activity and would not be misleading.

■ As a regulation of commercial speech, the City's sign ordinance meets the *Central Hudson* test. First, "[t]he governmental interests asserted, preserving aesthetic values and traffic safety, are clearly 'substantial' within the meaning of the second part" of the *Central Hudson* test. *National Advertising,* 912 F.2d at 409; *see Metromedia,* 453 U.S. at 507–08, 101 S.Ct. 2882; sign ordinance § 4–1E–2(A), (B), (D), (E) and (F). Next, it is well established that the prohibition of off-site billboards directly advances these governmental interests. *See Metromedia,* 453 U.S. at 510, 101 S.Ct. 2882 (prohibition of offsite advertising directly related to stated objectives; city may conclude that off-site advertising presents more significant problem than onsite advertising); *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 810, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (prohibiting certain signs "responds precisely to the substantive problem" of visual blight); *National Advertising,* 912 F.2d at 409. Finally, the ordinance reaches no further than necessary to accomplish its

---

**2.** Plaintiff has not argued that the distinction between offsite commercial signs and noncommercial signs is impermissible. Accordingly, the Court need not address the issue.

**3.** Plaintiff apparently claims that the Lenexa ordinance discriminates in favor of property owners in the City because non-property owners may not erect signs with noncommercial messages. *See Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion For*

Summary Judgment (Doc. # 36) filed June 16, 1999, at 11. Plaintiff did not include any such claim in the *Pretrial Order* (Doc. # 37) filed June 17, 1999, which controls at this stage of the case. See D.Kan.Rule 16.2(c). Nevertheless, the Court rejects plaintiff's argument because the ordinance contains no property ownership requirement and the ordinance allows noncommercial messages even if they do not pertain to onsite subjects. *See* § 4–1E–3.

goals of promoting traffic safety and the aesthetics of the City. In *Metromedia*, the Supreme Court noted:

> We reject appellants' claim that the ordinance is broader than necessary and, therefore, fails the fourth part of the *Central Hudson* test. If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them. The city has gone no further than necessary in seeking to meet its ends. Indeed, it has stopped short of fully accomplishing its ends: It has not prohibited all billboards, but allows onsite advertising and some other specifically exempted signs.

*Metromedia*, 453 U.S. at 508, 101 S.Ct. 2882. The Tenth Circuit has reached a similar conclusion. "Even if something less than the prohibition of off-site commercial billboards might serve the same safety and aesthetic purposes, the limited prohibition here is certainly the 'most direct and perhaps the only effective approach.'" *National Advertising*, 912 F.2d at 409 (quoting *Metromedia*, 453 U.S. at 508, 101 S.Ct. 2882). Likewise, the City of Lenexa has prohibited offsite commercial billboards. Unlike the ordinance at issue in *Metromedia*, however, the Lenexa ordinance specifically allows noncommercial speech in lieu of commercial speech on any sign which is otherwise allowed. The City has therefore satisfied the *Central Hudson* test with respect to its restriction on offsite billboards. *See Metromedia*, 453 U.S. at 511–12, 101 S.Ct. 2882 ("offsite commercial billboards may be prohibited while onsite commercial billboards are permitted").

Plaintiff contends that the City of Lenexa has not satisfied the last three parts of the *Central Hudson* test because it relies solely on legislative findings that the ordinance promotes the governmental interests of traffic safety and aesthetics. Relying on Justice Brennan's concurring opinion in *Metromedia*, plaintiff claims that the City has the burden to come forward with evidence which demonstrates that billboards actually impair traffic safety and the beauty of the environment. Plaintiff ignores the fact that seven Justices rejected Justice Brennan's analysis in this regard. They "agreed that San Diego's legislative judgment that billboards contribute to traffic hazards and visual blight sufficed to justify a complete ban on offsite commercial billboards." *Ackerley Communications v. Krochalis*, 108 F.3d 1095, 1099 n. 5 (9th Cir.1997); *see Metromedia*, 453 U.S. at 507–08, 101 S.Ct. 2882 (plurality); *id.* at 552, 101 S.Ct. 2882 (Stevens, J., dissenting in part); *id.* at 559–61, 101 S.Ct. 2882 (Burger, C.J., dissenting); *id.* at 570, 101 S.Ct. 2882 (Rehnquist, J., dissenting). The Supreme Court reaffirmed this conclusion in *Taxpayers for Vincent, supra*, 466 U.S. at 806–07, 104 S.Ct. 2118 ("We reaffirm the conclusion of the majority in *Metromedia*. The problem addressed by this ordinance—the visual assault on the citizens of Los Angeles presented by an accumulation of signs posted on public property—constitutes a significant substantive evil within the City's power to prohibit."). In *National Advertising*, 912 F.2d at 409, the Tenth Circuit reached a similar conclusion.

In an effort to distinguish *Metromedia*, plaintiff argues that in *Edenfield v. Fane*, 507 U.S. 761, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993), the Supreme Court recently refined the *Central Hudson* test. In *Edenfield*, the Court stated that (1) the government must show that the challenged regulation advances its interest in a direct and material way; (2) the government's burden is not satisfied by mere speculation or conjecture; and (3) the government must demonstrate that the harms it recites are real and that its restrictions will in fact alleviate them to a material degree. 507 U.S. at 770–71, 113 S.Ct. 1792. In *Edenfield*, however, the Supreme Court did not alter the *Central Hudson* test. Rather, citing cases as early as 1977, the Supreme Court stated that the above principles were well established. *Id.* Although the government is required to make the above showings, it may do so with common sense

and/or legal precedent. *See Metromedia*, 453 U.S. at 509, 101 S.Ct. 2882 ("We likewise hesitate to disagree with the accumulated, common sense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety."); *United States v. Edge Broad. Co.*, 509 U.S. 418, 434, 113 S.Ct. 2696, 125 L.Ed.2d 345 (1993) (accepting legislative judgment that advertising increases demand); *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487, 115 S.Ct. 1585, 131 L.Ed.2d 532 (1995) (recognizing as common sense that "a restriction on the advertising of a product characteristic will decrease the extent to which consumers select a product on the basis of that trait").

In the case of billboards, both the Supreme Court and the Tenth Circuit have accepted legislative judgment that prohibiting billboards promotes traffic safety and the aesthetics of the surrounding area. *See Metromedia*, 453 U.S. at 509–10, 101 S.Ct. 2882; *National Advertising*, 912 F.2d at 409. The Supreme Court did not cast any doubt on these conclusions in *Edenfield* or other recent commercial speech cases. *See Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 119 S.Ct. 1923, 1932, 144 L.Ed.2d 161 (1999) (permissible to assume more advertising would increase demand for gambling); *Edge*, 509 U.S. at 434, 113 S.Ct. 2696 (post *Edenfield* case, accepting legislative judgment that advertising increases demand); *Krochalis*, 108 F.3d at 1099 (*Metromedia* remains the law with respect to billboard regulation); *Anheuser–Busch, Inc. v. Mayor & City Council of Baltimore City*, 855 F.Supp. 811, 817–18 (D.Md.1994) (Supreme Court has deferred to some legislative judgments even after *Edenfield*), *aff'd*, 63 F.3d 1305 (4th Cir. 1995), *vacated*, 517 U.S. 1206, 116 S.Ct. 1821, 134 L.Ed.2d 927 (1996), *judgment reinstated*, 101 F.3d 325 (4th Cir.1996), *cert. denied*, 520 U.S. 1204, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997); *see also 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 508, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) ("Our commercial speech cases recognize some room for the exercise of legis-

lative judgment.") (citing *Metromedia*, 453 U.S. at 507–08, 101 S.Ct. 2882). Although the Supreme Court has recently rejected several legislative judgments regarding commercial speech regulations, it has not suggested that to satisfy the *Central Hudson* test, expert opinions or other evidence must be presented in cases where common sense will logically suffice. The legislative judgments which the Supreme Court recently rejected went significantly beyond the common sense conclusion that billboards are a traffic hazard and impair the beauty of the surrounding area, and related conclusions that prohibiting certain billboards will reduce these harms. *See Greater New Orleans*, 119 S.Ct. at 1933 (rejecting judgment that decrease in broadcast advertising for casinos will reduce compulsive gambling); *44 Liquormart*, 517 U.S. at 505–06, 116 S.Ct. 1495 (rejecting judgment that liquor price advertising ban will significantly advance interest in promoting temperance); *Rubin*, 514 U.S. at 487–91, 115 S.Ct. 1585 (rejecting judgment that prohibition of labels displaying alcohol content will reduce "strength wars" between producers; noting conflicting statutory provisions which actually could promote such competition); *Edenfield*, 507 U.S. at 770–72, 113 S.Ct. 1792 (rejecting judgment that ban on CPA solicitations would help prevent fraud and overreaching, and preserve the independence of CPAs).

In sum, the Court finds that the prohibition of offsite commercial signs is constitutional and satisfies the test for commercial speech regulation set forth in *Central Hudson*. Defendant's motion for summary judgment on the issue is sustained and plaintiff's motion for summary judgment on the issue is overruled.

### III. Restrictions On Political Campaign Signs

The Lenexa sign ordinance provides that "[p]olitical signs may be permitted on any property of the same size as allowed for a real estate sign. Political campaign signs

must be removed within 7 days after the election or campaign issue has been decided." *See* § 4–1E–4(I). The Court notes the distinction between "political campaign signs," which must be removed within seven days after an election or campaign issue has been decided, and "political signs," which are not subject to such a durational restriction.

As a threshold matter, the Court must determine whether the restriction on political campaign signs is content-based or content-neutral. *See Rappa v. New Castle County*, 18 F.3d 1043, 1053 (3d Cir. 1994). Then, based on the answer to that inquiry, the Court must apply the appropriate level of scrutiny. *See id.* If a statute is content-based, it must be necessary to serve a compelling state interest and narrowly drawn to achieve that end. *See Boos v. Barry*, 485 U.S. 312, 321, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). On the other hand, time, place and manner restrictions are constitutional provided that they are "justified without reference to the content of the regulated speech," they are narrowly tailored to serve a significant governmental interest, and "they leave open alternate channels for communication of the information." *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984).

The Court finds that the durational restriction on political campaign signs is content-based because "determining whether a sign may stay up or must come down requires consideration of the message it carries." *Ackerley Communications v. City of Cambridge*, 88 F.3d 33, 36 n. 7 (1st Cir.1996) (following *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427–31, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993)); *see Consolidated Edison Co. v. Public Serv. Comm'n*, 447 U.S. 530, 537, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980) ("The First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic."); *Whitton v. City of Gladstone, Mo.*, 54 F.3d 1400,

1403–04 (8th Cir.1995) ("The Supreme Court has held that a restriction on speech is content-based when the message conveyed determines whether the speech is subject to the restriction."). *But see Rappa*, 18 F.3d at 1067; *Messer v. City of Douglasville, Ga.*, 975 F.2d 1505, 1509 (11th Cir.1992), *cert. denied*, 508 U.S. 930, 113 S.Ct. 2395, 124 L.Ed.2d 296 (1993). The ordinance does not restrict other temporary signs in the same manner as "political campaign" signs. For example, political, real estate and onsite advertising signs are not subject to any durational restriction. *See* Sign Ordinance § 4–1E–4(I), 4–1E–12, 4–1E–3(G). Moreover, construction signs do not have to be removed until 30 days after a certificate of occupancy has been issued. *See id.* § 4–1E–12(E). Thus the durational restriction on political campaign signs is content-based. This conclusion is consistent with the decisions of other courts which have addressed the issue. *See, e.g., Whitton*, 54 F.3d at 1404 (8th Cir.1995); *Dimas v. City of Warren*, 939 F.Supp. 554, 556–57 (E.D.Mich.1996); *Collier v. City of Tacoma*, 121 Wash.2d 737, 854 P.2d 1046, 1053 (1993) (en banc); *Orazio v. Town of North Hempstead*, 426 F.Supp. 1144, 1149 (E.D.N.Y.1977); *see also City of Antioch v. Candidates' Outdoor Graphic Serv.*, 557 F.Supp. 52, 58 (N.D.Cal.1982) (durational restriction was viewpoint neutral but "by singling out political signs for restrictive treatment," ordinance effectively is content-based).

Defendant maintains that its ordinance effectively imposes no restriction on political campaign signs because anyone "required to remove a political campaign sign pursuant to the 7–day limit could erect exactly the same sign the following day." *Defendant's Reply To Plaintiff's Motion For Summary Judgment* (Doc. # 35) filed June 16, 1999 at 11. Defendant ignores the fact that the seven day limit is indeed a restriction, even if an ineffective one, and the restriction applies only to "political campaign" signs. Political, real estate and construction signs are not subject to such a restriction. Defendant argues that the

restriction is justified because political campaign signs tend to proliferate near the date of an election or a campaign and they all but lose their essential purpose once the election has been held or the campaign has been concluded. The City has not cited any evidence or legislative finding to support this conclusion, and it has failed to justify its more severe restriction of political campaign signs than of real estate, political or construction signs. The City cited problems with respect to political campaign signs are inherent with most temporary signs and even some onsite signs which advertise a particular event, *i.e.* at some point the signs lose their essential purpose because of the passage of time. The City's restriction on political campaign signs, which does not apply to other temporary signs or onsite advertising signs, does not survive strict scrutiny under the First Amendment. *See Metromedia*, 453 U.S. at 514–15, 101 S.Ct. 2882 ("With respect to noncommercial speech, the city may not choose the appropriate subjects for public discourse"); *City of Cambridge*, 88 F.3d at 37 ("But with rare exceptions, the First Amendment does not permit Cambridge to value certain types of noncommercial speech more highly than others") (footnote omitted); *Union City Bd. of Zoning v. Justice Outdoor Displays, Inc.*, 266 Ga. 393, 467 S.E.2d 875, 879 (1996) (municipality cannot place a higher value on a particular category of noncommercial speech); *Curry v. Prince George's County, Md.*, 33 F.Supp.2d 447, 454–55 & n. 10 (D.Md.1999) (invalidating requirement that political signs be removed within 10 days after an election); *cf. Collier*, 854 P.2d at 1058 (holding invalidating preelection restrictions "does not compel a change to postevent removal requirements *as long as such requirements are reasonable and apply to all temporary events*, such as political campaigns, home sales and residential renting") (emphasis added). The City's requirement that political campaign signs be removed within seven days is particularly troubling in residential areas. *See City of Ladue v. Gilleo*, 512 U.S. 43, 54–57,

114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (noting important and unique nature of residential signs as a means of expression); *id.* at 58–59, 114 S.Ct. 2038 (locality's interest in aesthetics or traffic safety rarely will override a citizen's right to free speech on his or her own property). For these reasons, the Court finds that the second sentence of section 4–1E–4(I) of the sign ordinance is unconstitutional in its restriction on political campaign signs. Plaintiff's motion for summary judgment on the issue is sustained and defendant's motion is overruled.

## IV. Severability Of Lenexa Sign Ordinance

 The severability of a local ordinance is a question of state law. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). The Kansas Supreme Court has stated the test as follows:

> Whether the court may sever an unconstitutional provision from a statute and leave the remainder in force and effect depends on the intent of the legislature. If from examination of a statute it can be said that the act would have been passed without the objectional portion and if the statute would operate effectively to carry out the intention of the legislature with such portion stricken, the remainder of the valid law will stand. Whether the legislature had provided for a severability clause is of no importance. This court will assume severability if the unconstitutional part can be severed without doing violence to legislative intent.

*Thompson v. K.F.B. Ins. Co.*, 252 Kan. 1010, 1023, 850 P.2d 773 (1993) (quoting *Felten Truck Line, Inc. v. State Bd. of Tax Appeals*, 183 Kan. 287, 300, 327 P.2d 836 (1958)).

 The Court has found that only one limited provision of the Lenexa sign ordinance is unconstitutional, *i.e.* the restriction related to the removal of political campaign signs. After carefully reviewing the

entire ordinance, the Court finds that the ordinance would have passed even without the durational restriction on political campaign signs. The restriction on political campaign signs is not intertwined with the remaining provisions of the ordinance such as the prohibition of offsite commercial signs. For these reasons, the Court strikes only the second sentence of section 4–1E–4(I) of the ordinance. The remainder of the Lenexa sign ordinance shall remain in effect.

**IT IS THEREFORE ORDERED** that *Defendant's Motion For Summary Judgment* (Doc. # 30) filed May 24, 1999, be and hereby is **SUSTAINED in part** and **OVERRULED in part.**

**IT IS FURTHER ORDERED** that *Plaintiff's Motion For Summary Judgment* (Doc. # 32) filed May 24, 1999, be and hereby is **SUSTAINED in part** and **OVERRULED in part.**